**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

RANDOLPH C. EARLE,

                                                 Plaintiff,

  - v -

                                                 Civ. No. 1:15-CV-1060

H&M HENNES & MAURITZ L.P.; OFFICER TODD            (BKS/DJS)
ROBERTS, *Town of Guilderland Police Department*;
SENIOR INVESTIGATOR THOMAS FUNK, *Town of*
*Guilderland Police Department*; INVESTIGATOR BRIAN
LEACH, *Town of Guilderland Police Department*; & TOWN OF
GUILDERLAND,

                                               Defendants.
_____

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION & ORDER

On the eve of the close of the already-extended discovery period, the Court received a Letter-Motion from Plaintiff's counsel seeking, *inter alia*, to extend the deadline to complete certain limited discovery, as well as a corresponding extension of the deadline for the filing dispositive motions. Dkt. 48, Pl.'s Lt.-Mot. In addition, Plaintiff's counsel requests time to obtain a computer expert and engage in expert disclosure. *Id.* On February 8, 2017, the Court held a telephone conference on the record and made several rulings on certain issues while reserving on others. As set forth during that conference, and summarized below, Plaintiff's requests are **granted in part and denied in part**.

### I. BACKGROUND

#### A. Plaintiff's Complaint

This action was commenced on August 27, 2015. Dkt. No. 1, Compl. An Amended Complaint was then filed as of right on September 30, 2015. Dkt. No. 6, Am. Compl. The Amended Complaint alleges that on the evening of November 14, 2014, Plaintiff and an

acquaintance – both African American males – went to the H&M store located inside the Crossgates Mall, located in Guilderland, New York, where Plaintiff intended to purchase some clothes. Am. Compl. at ¶¶ 23-25. Plaintiff selected a "pair of sweatpants and brought the item to the register in order to pay." *Id*. at ¶ 26. At the register, Plaintiff attempted to use a payment card associated with his "MasterCard account ending with 3605." *Id.* at ¶ 27. After "swip[ing]" Plaintiff's card, the H&M employee told Plaintiff that the card "registered" as a Visa card ending with 7505.[1] *Id.* at ¶¶ 28-29.

The employee contacted H&M store security, and one or more of the security officers told Plaintiff to wait inside the store. *Id.* at ¶¶ 30-31. H&M employees also contacted the Guilderland Police Department. *Id*. at ¶ 32. Plaintiff indicates that he voluntarily waited until police arrived to "straighten out the issue with his payment card." *Id.* at ¶¶ 33 & 112. Defendant Guilderland Police Officer Todd Roberts arrived at the store, arrested Plaintiff, and walked him through Crossgates Mall in handcuffs. *Id.* at ¶¶ 35-38. After an investigation, lasting about two hours, the officers allegedly determined that the credit cards that Plaintiff had on his possession at the station were validly his and not stolen. *Id.* at ¶¶ 43-46 & 50-52. Guilderland Police then released Plaintiff in the Crossgates Mall parking lot. *Id.* at ¶ 53. As part of the follow-up investigation, Officer Roberts returned to H&M and had Earle's MasterCard swiped, which showed the correct information. *Id*. at ¶¶ 55-56.

The Amended Complaint alleges the following claims against the Defendants: (1) illegal detention in violation of the Fourth Amendment; (2) excessive force in violation of the Fourth and

---

[1] The Court's understanding, based upon the most recent conference, is that the Plaintiff initially swiped the card and then, when questioned further, supplied his MasterCard to the register attendant at which point the discrepancy was noted.

*-2-*

Fourteenth Amendments; (3) discrimination under 42 U.S.C. § 1981; (4) illegal detention under New York State law; and (5) assault and battery under New York State law. *Id*. at ¶¶ 58-163. The Guilderland Police Defendants have answered the Amended Complaint and asserted numerous affirmative defenses, including a claim that they had reasonable suspicion and/or probable cause to detain the Plaintiff. Dkt. No. 9 at ¶¶ 47-48. The H&M Defendants also rely on a common law privilege codified as New York General Business Law § 218. Dkt. No. 12 at ¶ 32.

## B. Discovery History

A Rule 16 Conference was held with the Court on December 2, 2015, and the on the following date, a Uniform Pretrial Scheduling Order was issued, setting forth, *inter alia*, a discovery deadline of December 27, 2016. Dkt. No. 17. That Scheduling Order specifically provided that service of Plaintiff's expert disclosure was to be completed by September 28, 2016, and Defendants' deadline to serve their expert disclosures was set for November 14, 2016; rebuttals were to be served by November 28, 2016. *Id*.

During the Rule 16 Conference a discussion ensued regarding the cash register readout and related technical issues. The Plaintiff's initial position in this lawsuit was the that operative event which led to his arrest and detention, was a computer glitch. Am. Compl. at ¶ 64 ("The sole information defendants relied upon to arrest and detain plaintiff for use of a stolen credit card was that the H&M computer at the cash register made an error in printing out two digits on the receipt."). Plaintiff's counsel indicated his desire to obtain from Defendant H&M their complete point of sale billing software, with all manuals, and the Court expressed its view that such a wide ranging demand was not proportionally relevant to the needs of this particular case.

Following the Rule 16 Conference, the parties, on several occasions, solicited the Court to

intervene and rule on discovery issues. First, on December 22, 2016, Defendants sought a Court conference based upon a dispute over access to Plaintiff's credit card report in order to determine what cards he was authorized to use and what transactions were registered. Dkt. No. 27, H&M Lt.-Mot. Following a telephone conference with the parties, I directed that such report be provided to me for an *in camera* review. Dkt. No 32, Text Order, dated March 15, 2016. Approximately one month later, Defendant H&M requested Court assistance in obtaining the credit card history for the credit card number which the cash register at H&M recorded for Mr. Earle's transaction. Dkt. No. 34, H&M Lt.-Mot. In stating his position on Defendant's proposed subpoena, Plaintiff's counsel renewed requests regarding "disclosure of the computer software and operation manual of the software being run at the H&M store in Crossgates on the date in question." Dkt. No. 35, Pl.'s Lt. Based upon the written arguments submitted to the Court, I authorized and directed that a subpoena be issued to the Astoria Savings and Loan Association, which issued the subject Visa card, to produce to the Court for an *in camera* review all transaction records for that card for a limited period of time. Dkt. No. 39, Order dated Apr. 27, 2016. As to Plaintiff's discovery requests, the Court reserved until after receipt of the *in camera* records; I also noted that the discovery deadline was currently set for December 27, 2016, I extended the mediation deadline to August 22, 2016, and I directed the parties to continue to engage in discovery. *Id*. Upon receipt and review of the records,[2] the Court issued an Order allowing disclosure to the parties. Dkt. No. 43, Text Order, dated June 7, 2016.

On December 12, 2016, just prior to the expiration of the discovery period, Plaintiff's

---

[2] The records that were produced disclosed that the credit card, which was issued to an individual located in New York City, contained a charge from H&M in Albany, New York, on November 14, 2014, in the amount of $20.75. Dkt. No. 43.

counsel submitted a Letter-Motion requesting that discovery be extended until February 1, 2017. Dkt. No. 46, Pl.'s Lt.-Mot. No request at that time was made to extend the expert disclosure deadlines, and indeed those deadlines set forth in the Scheduling Order had long since passed. There was also no mention of any enduring discovery dispute lingering with the parties. In light of the impending expiration of the deadline, the Court granted an extension of the discovery deadline to February 1, 2017, and accordingly extended the dispositive motion filing deadline to March 17, 2017; all other provisions of the Scheduling Order remained in effect. Dkt. No. 47, Text Order, dated December 14, 2016.

Days prior to the expiration of the newly set discovery deadline, the Court received a Letter-Motion from Plaintiff's counsel seeking a conference with the Court in order to resolve more discovery disputes and, once again, to extend the discovery deadline. Dkt. No. 48, Pl.'s Lt.-Mot.

Within his Letter-Motion, Plaintiff raises several issues including: 1) the need to depose a non-party witness, namely, the former employee of H&M who worked the register during the transaction with Plaintiff;[3] 2) Plaintiff's request for copies of personnel files for the three non-party witnesses prior to the scheduled depositions; 3) Plaintiff's desire to "engage an expert witness concerning operation of the H&M point-of-sale register at Crossgates and the H&M network"; and 4) document demands made by Plaintiff during the deposition of H&M's global system IT manager. *Id*.

As noted above, on February 8, 2017, the Court held a conference with the parties in order to address these discovery issues. During that conference, I made several rulings on the record while reserving on others; I further indicated that an Order would follow dealing with the all issues raised

---

[3] Counsel indicated in his letter that he endeavored to depose three non-party witnesses, each of whom are former employees of H&M, but that only two were able to attend a deposition noticed for January 31, 2017.

at the conference. Hereinbelow, I summarize the rulings made during the conference and issue rulings as to any other issue raised by the parties.

## II. DISCUSSION

### A. The Effect of the Scheduling Order

Rule 16 of the Federal Rules of Civil Procedure provides that a court must issue a scheduling order in a civil action and such order "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." FED. R. CIV. P. 16(b)(1) & (b)(3)(A). Once issued, a scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). In addition, Local Rule 16.1 expressly warns that "[t]he Court shall strictly enforce any deadlines that it establishes in any case management order, and the Court shall not modify these, even upon stipulation of the parties, except upon a showing of good cause." N.D.N.Y.L.R. 16.1(f).

"The importance of the [Uniform Pretrial Scheduling Order] to a district court's effective control and management of a case, cannot be overstated." *Kassim v. City of Schenectady*, 221 F.R.D. 363, 365 (N.D.N.Y. 2003). Such an order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Id*. (internal quotation marks and citation omitted). "Deadlines imposed under a Rule 16 scheduling order are not mere suggestive guideposts; they are meaningful deadlines established by the court, in consultation with the litigants, intended to insure that the ends of justice and the need for prompt and efficient adjudication of controversies are met." *Syracuse Univ. v. Otis Elevator Co.*, 2010 WL 2680230, at *2 (N.D.N.Y. July 1, 2010).

In order to obtain relief from a scheduling order, a party must demonstrate good cause for the requested alteration. *Wilcox v. RBS Citizens, N.A.*, 2009 WL 1813219, at *3 (N.D.N.Y. June 25,

2009) (citations omitted).  To demonstrate good cause "a party must show that despite their diligence the time table could not have reasonably been met." *Id*. (quoting *Carnrite v. Granada Hosp. Group, Inc.,* 175 F.R.D. 439, 446 (W.D.N.Y. 1997)).  "Good cause requires a greater showing than excusable neglect." *Id*. (quoting *Duval v. U.S Xpress Enterprises, Inc.*, 2005 WL 6021864, at *2 (N.D.N.Y. Oct. 13, 2005)).  On example of good cause is where there was an intervening event that was not foreseen by the parties or the court at the initial conference.  *Kassim v. City of Schenectady*, 221 F.R.D. at 366 (citing *Corkrey v. Internal Rev. Serv*., 192 F.R.D. 66, 67 (N.D.N.Y.2000)).  If the moving party cannot establish that it has proceeded with diligence, then the court's inquiry should stop.  *Id.*

### B. Plaintiff's Discovery Requests

With regard to Plaintiff's current request for an extension of the discovery deadline, the Court finds that the Plaintiff has established good cause for an extension of time in order to complete a deposition of a non-party employee, and therefore the Court agrees to extend the discovery deadline to **March 31, 2017** for purposes of completing this deposition.  During the conference, the parties agreed that the venue of the deposition will be in New York City, where the witness apparently resides.

With regard to personnel files of the nonparties, I note first that during the telephone conference, Plaintiff's counsel withdrew his request for the files of the two former employees whom he has already deposed.  However, with regard to the remaining employee, it appears that counsel requests a copy of the file so that he may determine if there is any relevant information regarding dishonesty as well as to glean the specific reason for the separation from H&M.  Defense counsel objected to this discovery on relevance grounds, noting that the file may contain information which

is both irrelevant, and possibly privileged. Plaintiff's counsel requested that the Court perform an *in camera* review of the personnel file, in line with the Court's practice of reviewing police personnel files. However, the Court declined that invitation and instead directed counsel for H&M to immediately obtain a copy of the file question and review it with Plaintiff's counsel in an attempt to agree upon what if anything should be disclosed. If after a good faith attempt there remains a dispute with regard to a particular document, that document can be submitted to the Court for its review.

Next, Plaintiff's counsel indicates that he intends upon fashioning written discovery demands based upon the most recent deposition of an H&M representative. Attorney Oliver notes that despite the fact that the deposition of that individual was conducted on January 13, 2017, he needs the transcript in order to prepare appropriate document demands because of the technical nature of the subject matter. This makes sense to the Court. At the time of the conference, counsel had not yet obtained the transcript and I urged him to have the transcript expedited. While the Court is presently unsure whether such transcript has been ordered/received, the ruling made during the conference stands and Plaintiff is granted until **February 28, 2017**, to submit narrowly tailored, and relevant, supplemental discovery demands; service of these demands by this date will allow the Defendant to respond prior to the expiration of the newly extended discovery deadline of **March 31, 2017**.

Finally, Plaintiff's counsel requests additional time to obtain an expert regarding the operation of H&M's point-of-sale register at Crossgates and the H&M network. Dkt. No. 48 at p. 3. The basis for this request is the recently held above-referenced deposition of H&M's global manager of technical systems. This deposition was held at the demand of Plaintiff's counsel and required the witness to travel from Stockholm, Sweden. This individual was a fact witness and was

not noticed as an expert by H&M. Plaintiff's counsel contends that because the technical manager was asked questions that resulted in him providing his opinion, this should allow Plaintiff the opportunity "to retain an expert to counter his testimony." *Id.* at p. 4. The Court disagrees.

As an initial point, it should be noted that Earle's counsel "does not simply seek the untimely disclosure of an expert who has already issued a report and is ready to be deposed." *Kassim v. City of Schenectady*, 221 F.R.D. at 366 (citation omitted). Rather, he seeks leave to retain an expert, who would need time to prepare and issue a report, and, presumably, allow time for Defendants to depose the expert and perhaps even obtain one of their own. Second, the Plaintiff's counsel has known about "the computer glitch" theory from the very inception of the case, but has apparently taken no action to purse expert evidence on it during the more than one year that followed the Rule 16 Conference. Indeed, as part of the parties' Civil Case Management Plan submitted to the Court prior to the Rule 16 Conference, it was noted that "Plaintiff expects to employ . . . perhaps a consumer fraud/IT expert to determine how credit cards could be swiped and the information incorrectly displayed, and perhaps other experts." Dkt. No. 15 at p. 8. It is not clear whether the impetus to hire an expert was triggered by the deposition of the H&M representative, but such claim is of no moment since that witness's deposition was originally noticed in October 2016, which was *after* the expert disclosure deadline originally set in the Court's Scheduling Order. No request to extend the deadline for experts was submitted prior to the expiration of that deadline, and now, four months after the expiration of the deadline to serve expert disclosure, Plaintiff is seeking to retain an expert.

The reasons offered by Plaintiff's counsel in his Letter Request for an extension of the Court's established expert deadlines simply do not establish due diligence nor good cause for the requested extension. "The disruption caused by the proliferation of untimely expert testimony is real

and attorneys must know such will not be permitted." *Kassim v. City of Schenectady*, 221 F.R.D. at 367 (internal quotation marks and citations omitted).

**WHEREFORE**, it is hereby

**ORDERED**, that the Plaintiff's discovery-related requests are **granted in part and denied in part** as set forth above; and it is further

**ORDERED**, that the deadline to complete fact discovery is extended to **March 31, 2017**, and the deadline to file dispositive motions is extended to **May 5, 2017**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order on the parties in accordance with the Local Rules.

Pursuant to FED R. CIV. P. 72(a), the parties have fourteen (14) days within which to file written objections to the foregoing discovery order. Such objections shall be filed with the Clerk of the Court. As specifically noted in Rule 72(a) "[a] party may not assign as error a defect in the order not timely objected to."

**SO ORDERED**.

Date: February 28, 2017
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge