**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RANDOLPH C. EARLE,**

                                    **Plaintiff,**

**v.**                                                    **1:15-cv-01060 (BKS/DJS)**

**H&M HENNES & MAURITZ L.P.; OFFICER TODD**
**ROBERTS,** *Town of Guilderland Police Department***;**
**SENIOR INVESTIGATOR THOMAS FUNK,** *Town of*
*Guilderland Police Department***; INVESTIGATOR BRIAN**
**LEACH,** *Town of Guilderland Police Department***; TOWN OF**
**GUILDERLAND**

                                    **Defendants.**
_____

**APPEARANCES:**

**Lewis B. Oliver, Jr., Esq.**
Oliver Law Office
156 Madison Avenue
Albany, NY 12202
*For Plaintiff*

**James P. Connors, Esq.**
Marshall Dennehey Warner Coleman & Goggin
800 Westchester Avenue, Suite C-700
Rye Brook, NY 10573
*For Defendant H&M Hennes & Mauritz L.P.*

**M. Randolph Belkin**
Shanz & Belkin
26 Century Hill Drive, Suite 202
Latham, NY 12110
*For Defendants Todd Roberts, Thomas Funk, Brian Leach, and Town of Guilderland*

**Hon. Brenda K. Sannes, United States District Court Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

This litigation arises from alleged violations of Plaintiff Randolph C. Earle's ("Plaintiff")

rights in connection with an incident that occurred on November 14, 2014 at the Crossgates Mall

in Guilderland, New York.  Plaintiff brings various claims against Defendant H&M Hennes &

Mauritz L.P. ("H&M"), Guilderland Police Department Officers and Investigators, and the Town

of Guilderland (the "Guilderland Defendants") under 42 U.S.C. §§ 1981 and 1983, and New

York state law.  Plaintiff alleges that H&M and the Guilderland Defendants subjected him to

illegal detention, excessive force, racial discrimination, and assault and battery in violation of the

Fourth and Fourteenth Amendments, § 1981, and state law after Defendants suspected that he

used a manipulated card to attempt a purchase while shopping at a store operated by Defendant

H&M.  (Dkt. No. 6, at 1–2).  Currently before the Court are Defendants' motions for summary

judgment.  (Dkt. Nos. 64, 65).  For the reasons that follow, Defendants' motions are granted.

## II.    BACKGROUND[1]

### A.    Incident at H&M

On the afternoon of November 14, 2014, Plaintiff and an acquaintance—both African-

American males—went to the H&M store inside the Crossgates Mall.  (Dkt. No. 64-16, ¶ 7; Dkt.

---

[1] The facts stated herein are drawn from the parties' submissions, including Plaintiff's statement of material facts (Dkt. No. 64-16) and responses thereto (Dkt. Nos. 70-20, 70-21), as well as exhibits that the parties have submitted, to the extent that they could be presented in a form that would be admissible as evidence.  Where facts stated in a party's L.R. 7.1(a)(3) Statement are supported by testimonial or documentary evidence and denied with only a conclusory statement by the other party, the Court has found such facts to be true.  *See* N.D.N.Y. L.R. 7.1(a)(3); Fed. R. Civ. P. 56(e).

2

No. 70-19, ¶¶ 1–2[2]).  Plaintiff selected a pair of gray sweatpants and approached the cashier at the checkout counter to complete his purchase.  (Dkt. No. 64-16, ¶ 8; Dkt. No. 70-19, ¶ 3).  To pay for the sweatpants, Plaintiff swiped a Mastercard-branded debit card issued by the New York State Department of Labor, which was linked to an account containing Plaintiff's unemployment benefits.  (Dkt. No. 64-16, ¶¶ 9–11; Dkt. No. 70-19, ¶¶ 5–6).  The last four digits of Plaintiff's debit card were "3605."  (Dkt. No. 70-19, ¶ 6).  Plaintiff selected "credit" as the form of payment and the cashier asked to see the card that Plaintiff swiped; because the card was unsigned, the cashier asked Plaintiff to show proof of identification.  (Dkt. No. 64-16, ¶¶ 11–13; Dkt. No. 70-19, ¶¶ 8–10).  Plaintiff provided the cashier with his driver's license—the cashier then returned Plaintiff's driver's license but kept Plaintiff's debit card for the purpose of verifying that the information printed on the debit card matched the numbers that printed onto the receipt at the end of the transaction.  (Dkt. No. 64-16, ¶ 13; Dkt. No. 70-19, ¶¶ 10–11).  H&M supervisors had instructed employees, including the cashier, to compare the numbers printed on credit or debit cards with the numbers that printed at the end of a transaction because of increasing instances of fraud through the use of credit and debit cards with manipulated magnetic data.  (Dkt. No. 64-16, ¶ 3; Dkt. No. 70-19, ¶¶ 24–25).  H&M employees testified that they were trained to contact the authorities once a manager had confirmed that the numbers printed on a card did not match the numbers that printed on the associated receipt (Dkt. No. 64-16, ¶ 6; Dkt. No. 64-3, at 12; Dkt. No. 64-4, at 122; Dkt. No. 64-5, at 32).

Once the cashier had confirmed Plaintiff's identity, he approved the transaction and compared the numbers on Plaintiff's debit card with the numbers that printed on the receipt.

---

[2] Although Plaintiff has not moved for summary judgment, he nevertheless included an "Affirmative Statement of Material Facts" along with his opposition papers.  (Dkt. No. 70-19).  While his submission fails to comply with L.R. 7.1(a)(3), it is cited where there is record support for the facts asserted.

(Dkt. No. 64-16, ¶¶ 14–15; Dkt. No. 70-19, ¶¶ 12–14). The numbers, however, did not match— the receipt indicated that a Visa ending in "7505" had been swiped and successfully charged, but Plaintiff's debit card was a Mastercard ending in "3605." (Dkt. No. 64-16, ¶ 15; Dkt. No. 70-19, ¶ 14) The cashier kept Plaintiff's debit card and contacted his supervisor, who informed Plaintiff that the number on his debit card did not match the number printed on the receipt. (Dkt. No. 64-16, ¶¶ 16–24; Dkt. No. 70-19, ¶ 15, 27–34). That supervisor then contacted another supervisor— none of them, the cashier or supervisors, had ever encountered a situation where a customer's credit or debit card number did not match the number on a receipt printed at the end of a transaction. (Dkt. No. 64-16, ¶ 33, 43; Dkt. No. 70-19, ¶ 20). Both H&M supervisors testified that non-matching credit card numbers are an indicator of potential credit card fraud. (Dkt. No. 64-3, at 10–12; Dkt. No. 64-4, at 78; Dkt. No. 64-5, at 33–34). One of the supervisors then contacted the Guilderland Police Department to report that a "black man with a red hat" had possibly attempted to use a stolen card, while Plaintiff waited near the cash register. (Dkt. No. 64-16, ¶¶ 22–25, 27). Although H&M employees did not demand that Plaintiff remain in the store or otherwise prevent him from leaving, (Dkt. No. 64-16, ¶¶ 27–29), Plaintiff felt that he was not free to leave because H&M employees kept his debit card until the Guilderland Police arrived, (Dkt. No. 70-19, ¶ 43).

B.    **Plaintiff's Detention and Release**

Guilderland Police Officer Todd Roberts arrived approximately six minutes after H&M employees contacted the Guilderland Police Department, and two other officers arrived shortly thereafter. (Dkt. No. 64-16, ¶¶ 34, 39; Dkt. No. 70-19, ¶¶ 40–42, 55). One of the H&M supervisors gave Officer Roberts Plaintiff's debit card along with the printed receipt, and explained that the numbers did not match. (Dkt. No. 64-16, ¶¶ 36–37; Dkt. No. 70-19, ¶¶ 42– 46). The parties agree that, other than initially contacting the Guilderland Police Department and

asking Plaintiff to wait by the register until the police arrived, H&M employees had no involvement with the decision to detain Plaintiff or the investigation that followed.  (Dkt. No. 64-16, ¶¶ 51–53; Dkt. No. 70-19, ¶ 59).  Officer Roberts confirmed with Plaintiff that the card ending in "3605" was the card Plaintiff used, and also verified that none of the cards in Plaintiff's wallet ended in "7505" as printed on the receipt.  (Dkt. No. 64-16, at ¶¶ 46–48). Officer Roberts' affidavit states that he had "been involved with other cases . . . where there was conflicting information on a sales receipt and credit/debit card," that mismatching numbers are an indicator of a re-encoded card, and that he "did not ask to re-swipe the involved card because it already had debited someone else's account."  (Dkt. No. 65-3, ¶¶ 3, 12, 24).  Suspecting that "criminal activity had occurred and . . . that plaintiff had used an altered or forged debit card," (Dkt. No. 65-3, ¶ 14), Officer Roberts handcuffed Plaintiff behind his back and transported him to the Guilderland Police station for questioning, (Dkt. No. 64-16, ¶ 49; Dkt. No. 70-19, ¶ 58). While in the back of Officer Roberts' vehicle, Plaintiff complained that the handcuffs were too tight and were causing him pain.  (Dkt. No. 70-19, ¶ 67).

After arriving at the Guilderland Police station, Plaintiff was then seated and handcuffed to an eyehook bolted into a desk in the patrol room, and Officer Roberts read Plaintiff his *Miranda* rights.  (Dkt. No. 65-2, ¶ 10; Dkt. No. 70-19, ¶ 68; Dkt. No. 65-3, ¶¶ 19–20). Investigator Brian Leach assumed responsibility for the investigation and attempted to determine whether any of Plaintiff's cards were stolen, counterfeit, or had otherwise been manipulated. (Dkt. No. 64-16, ¶ 57; Dkt. No. 70-19, ¶¶ 40–42).  Because the Guilderland Police station was not equipped with a credit card reader, Investigator Leach took the cards contained in Plaintiff's wallet to the Colonie Police Department to determine whether the magnetically encoded information on Plaintiff's cards matched the information printed on each card.  (Dkt. No. 64-16,

¶¶ 58–63; Dkt. No. 70-19, ¶¶ 91–103).  The card reader revealed that the magnetic information

matched the information printed on each card, indicating that none of the cards had been

tampered with or altered.  (Dkt. No. 64-16, ¶¶ 58–63; Dkt. No. 70-19, ¶¶ 91–103).  Investigator

Leach returned to the Guilderland Police station and informed Plaintiff that charges were not

being filed against him; Plaintiff was then unhandcuffed and Officer Roberts transported him

back to Crossgates mall at approximately 7:45 pm.  (Dkt. No. 64-16, ¶¶ 63–67; Dkt. No. 70-19,

¶¶ 103–118).  Officer Roberts, still in possession of Plaintiff's debit card ending in "3605,"

returned to H&M and asked an employee to swipe Plaintiff's card once more to verify that the

magnetic information had not been altered.  (Dkt. No. 70-19, ¶¶ 123–128).  When the employee

ran the card through the reader, the resulting receipt indicated that the number encoded on the

magnetic strip matched the number printed on the card; the employee cancelled the transaction

so that funds would not be withdrawn from Plaintiff's account.  (Dkt. No. 70-19, ¶¶ 129–130).

Plaintiff and Officer Roberts then parted ways—Officer Roberts nevertheless kept Plaintiff's

debit card, and it was not returned to Plaintiff until several weeks later.  (Dkt. No. 65-2, ¶ 17;

Dkt. No. 70-19, ¶¶ 140–142).

Altogether, Plaintiff was handcuffed for approximately two hours.  (Dkt. No. 70-19,

¶ 67–72).  Plaintiff did not seek medical or psychological treatment after the incident and does

not claim to have suffered any injury beyond the discomfort he experienced while he was

detained.  (Dkt. No. 64-16, ¶¶ 68–70).

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if

all the submissions taken together "show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore,

"[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted).

## IV.    DISCUSSION

### A.    Defendant H&M

#### 1.    Plaintiff's § 1983 Claims

Plaintiff has asserted several claims against Defendant H&M under 42 U.S.C. § 1983 alleging constitutional violations of Plaintiff's rights, including illegal detention in violation of the Fourth Amendment, excessive force in violation of the Fourth and Fourteenth Amendments, and racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. (Dkt. No. 6, at 11, 18, 24). Defendant H&M argues that it is entitled to summary judgment as to each constitutional claim because H&M is a private, non-state actor that cannot be held liable under § 1983 as a matter of law. (Dkt. No. 64-17, at 15–16). The Court agrees.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Private parties are not proper defendants in a Section 1983 action unless the private parties were acting under color of state law." *Lee v. Law Office of Kim & Bae, PC*, 530 F. App'x 9, 9–10 (2d Cir. 2013). "[A] private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents. A mere conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (internal citations and quotation marks omitted).

Here, there is no evidence of any joint action between Defendant H&M and the Guilderland Police Department. "[A] private party who calls police officers for assistance or provides them with information that may lead to an arrest of an individual does not become a state actor rendering that party liable under § 1983 to the person detained, unless the police officers were improperly influenced or controlled by the private party." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 367 (S.D.N.Y. 2005) (citing *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)). In any event, Plaintiff acknowledges that "H&M is a private actor, and was not acting under state law." (Dkt. No. 70-22, at 8). Thus, because it is undisputed that Defendant H&M was not acting under color of state law, Plaintiff's § 1983 claims for illegal detention in violation of the Fourth Amendment, excessive force in violation of the Fourth and Fourteenth Amendments, and racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment must fail, and accordingly, are dismissed.

## 2.    § 1981 Racial Discrimination

To adequately establish a racial discrimination claim under 42 U.S.C. § 1981, a plaintiff must demonstrate "that (1) the plaintiff is a member of a racial minority, (2) the defendant intended to discriminate against the plaintiff on the basis of his race, and (3) the defendant discriminated in connection with one of the statues' enumerated activities." *Baron v. Miller*, No. 3:13-CV-0153 (FJS/DEP), 2014 U.S. Dist. LEXIS 112549, at *27–28, 2014 WL 3956562, at *12 (N.D.N.Y. Apr. 29, 2014) (citing *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000)), *report-recommendation adopted by* 2014 U.S. Dist. LEXIS 111692, 2014 WL 3956562 (N.D.N.Y. Aug. 13, 2014). "Those enumerated activities include the rights 'to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." *Brown*, 221 F.3d at 339 (quoting 42 U.S.C. § 1981(a)). "Essential to an action under Section 1981 are allegations that the

defendants' actions were purposefully discriminatory, and racially motivated." *Albert v. Carovano*, 851 F.2d 561, 571–72 (2d Cir. 1998). "While the burden of establishing a prima facie case is relatively low, it is well-established that a plaintiff who can offer nothing more than his or her own conclusory assertions in support of an allegation of racial discrimination cannot survive a motion for summary judgment." *Allen v. Cty. of Nassau*, 90 F. Supp. 3d 1, 7 (E.D.N.Y. 2015).

Plaintiff argues that racial discrimination may be inferred from H&M's failure to follow its own "practice" to allow a customer to use an alternative method of payment in the event that a "transaction is not approved." (Dkt. No. 70-22, at 14–15). Plaintiff fails to acknowledge, however, that the transaction here *was* approved. The red flag identified by the H&M employees was not that Plaintiff's card was declined by the bank, but that it was accepted—even though the numbers printed on Plaintiff's debit card did not match the numbers printed on the receipt. The H&M employees present that day had never encountered such a problem, and were instructed that the phenomenon is a common indicator of credit card fraud. In accord with their training, they contacted authorities.

Plaintiff fails to present facts sufficient to establish even a prima facie case that Defendants' discriminated against him on the basis of race. Plaintiff's allegations are conclusory, as the record is devoid of any suggestion that any action undertaken by any of the Defendants was motivated by discriminatory intent. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) ("[E]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment."); *Yusuf v. Vassar College*, 35 F.3d 709, 713–14 (2d Cir. 1994) (stating that a claim supported only by personal belief without "specific factual support" is insufficient to withstand summary judgment); *Edwards v. City of New York*, No. 03 CIV. 9407 (PAC), 2005 U.S. Dist. LEXIS

34376, 2005 WL 3466009, at *15 (S.D.N.Y. Dec. 19, 2005) (granting defendant's motion for summary judgment where "plaintiff asks this Court to find, merely from his own scant and conclusory testimony, that plaintiff's termination arose under circumstances giving rise to an inference of discrimination"). Accordingly, Plaintiff's discrimination claim under § 1981 is dismissed.

### B.    Guilderland Defendants

#### 1.    § 1983 False Arrest[3]

Plaintiff alleges that he was falsely arrested without probable cause in violation of the Fourth Amendment. (Dkt. No. 70-23, at 4–21). Defendants move for summary judgment on the theory that Officer Roberts had probable cause to arrest Plaintiff based on the report that he possessed and had attempted to use a stolen or altered debit card. (Dkt. No. 65-7, at 7–10). *See* N.Y. Penal Law §§ 165.15, 165.45, 190.78, and 190.81. Because the undisputed facts known by Officer Roberts objectively provided probable cause that Plaintiff possessed and attempted to use a stolen or altered debit card, Defendants are entitled to summary judgment on this claim.[4]

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, . . . is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted); *see also Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). To prove the elements of false arrest, a plaintiff must show that "(1) the

---

[3] While the Amended Complaint states a claim for "Fourth Amendment Illegal Detention," (Dkt. No. 6, at 11), both the Guilderland Defendants and Plaintiff refer to "false arrest" in their motion for summary judgment and response in opposition, respectively (Dkt. No. 65-7, at 7; Dkt. No. 70-23, at 10). Accordingly, the Court construes Plaintiff's claim against the Guilderland Defendants as one for false arrest.
[4] In light of this ruling the Court need not reach the Defendants' argument, raised in their reply memorandum, that Plaintiff's detention was an investigatory stop supported by reasonable suspicion. (Dkt. No. 74, at 3-5).

defendant intended to confine plaintiff, (2) the plaintiff was conscious of the confinement, (3) the

plaintiff did not consent to the confinement, and (4) the confinement was not otherwise

privileged." *Garenani v. County of Clinton*, 552 F. Supp. 2d 328, 333 (N.D.N.Y. 2008) (quoting

*Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). "The existence of probable cause to

arrest constitutes justification and is a complete defense to an action for false arrest." *Jenkins v.*

*City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (internal quotation marks omitted). Generally,

"probable cause to arrest exists when the officers have knowledge or reasonably trustworthy

information of facts and circumstances that are sufficient to warrant a person of reasonable

caution in the belief that the person to be arrested has committed or is committing a crime."

*Weyant*, 101 F.3d at 852. "The test for probable cause is an objective one and 'depends upon the

reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the

arrest." *Diop v. City of N.Y.*, 50 F. Supp. 3d 411, 419 (S.D.N.Y. 2014) (quoting *Zellner v.*

*Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007)). At the motion for summary judgment stage,

probable cause is "determinable as a matter of law if there is no dispute about the pertinent

events and the knowledge of the officers." *Weyant*, 101 F.3d at 852.

It is undisputed that, before arresting Plaintiff: (1) Officer Roberts responded to a call to

investigate the possible use of a stolen credit card at the H&M store; (2) H&M employees

explained to Officer Roberts and the other responding officers that the last four digits on

Plaintiff's card were different than the numbers that printed on the receipt at the conclusion of

the transaction; (3) H&M employees provided Officer Roberts with the card Plaintiff claimed to

have swiped, along with the receipt that printed at the conclusion of the transaction; and (4)

Officer Roberts verified that the numbers were in fact mismatched. (Dkt. No. 65-2, ¶¶ 3–6; Dkt.

No. 65-2, ¶¶ 2–5). Plaintiff nevertheless argues that probable cause did not exist, primarily

because: (i) Officer Roberts relied on the hearsay representations of H&M employees to establish what had occurred; (ii) Officer Roberts did not have training or knowledge as to the "operating mechanics of credit card machines or credit card fraud"; (iii) Plaintiff maintained that he had done nothing wrong; and (iv) the Guilderland Defendants' subsequent investigation determined that none of the cards he provided to the police had been manipulated.  (Dkt. No. 70-23, at 4–21).

Plaintiff, however, ignores the fact that Officer Roberts independently verified all of the information provided by H&M employees and confirmed that the number on the receipt did not match the numbers on any of Plaintiff's cards.  (Dkt. No. 65-2, at 4–6).  Plaintiff also fails to acknowledge that Officer Roberts was aware that Plaintiff's card was not denied, but that the number actually processed was approved and charged for the transaction.[5]  Furthermore, Plaintiff's insistence of his innocence is irrelevant for the purposes of a probable cause analysis—"the fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause and an officer's failure to investigate an arrestee's protestation of innocence generally does not vitiate probable cause."  *Panetta v. Crowley*, 460 F.3d 388, 395–96 (2d Cir. 2006) (citation and internal quotation marks omitted).  Finally, although the Guilderland Defendants ultimately determined that none of the cards provided by Plaintiff had been manipulated, the "validity of an arrest does not depend upon an ultimate finding of guilt or innocence."  *Crews v. Cty. of Nassau*, 996 F. Supp. 2d 186, 203 (E.D.N.Y. 2014) (quoting

---

[5] Although unknown to Officer Roberts at the time of the arrest, the card number actually charged in the transaction belonged to a student at the University of Albany.  (Dkt. No. 70-1, at 9).  As the Guilderland Defendants note, the likelihood of a card reader malfunctioning to randomly process a valid number belonging to an individual in the same city as the events in question "is simply astronomical."  (Dkt. No. 74, at 5 n.2).

*Peterson v. Cnty. of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998)).  "Rather, the court looks

only to the information the arresting officer had at the time of the arrest."  *Id.*

The undisputed record therefore indicates that the information available to Officer

Roberts was sufficient to give rise to the belief that Plaintiff possessed and had used a stolen

and/or altered debit card.  Because there are no material facts requiring trial, Plaintiff's § 1983

false arrest claim must be dismissed.

### 2.    Excessive Force

Plaintiff claims that, "[b]ecause defendant Roberts lacked sufficient probable cause to

arrest, detain, and investigate Plaintiff Earle, any force used in the course of plaintiff's arrest is

tantamount to excessive force."  (Dkt. No. 70-23, at 21).  As described above, Officer Roberts

did have probable cause to arrest Plaintiff.  Because Plaintiff has failed to raise a triable issue of

fact on his excessive force claim, summary judgment is warranted.

Any claim that police officers "have used excessive force—deadly or not—in the course

of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the

Fourth Amendment and its 'reasonableness' standard."  *Graham v. Connor*, 490 U.S. 386, 395

(1989) (emphasis omitted).  In determining whether a particular use of force is "reasonable," a

court must evaluate "the totality of the circumstances, which requires consideration of the

specific facts in each case, including the severity of the crime at issue, whether the suspect posed

an immediate threat to the safety of others and whether he is actively resisting arrest."  *Sullivan*

*v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000).  This "calculus of reasonableness must embody

allowance for the fact that police officers are often forced to make split-second judgments—in

circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is

necessary in a particular situation."  *Graham*, 490 U.S. at 396–97.

"Courts apply a separate standard to claims for excessive force in the use of handcuffs,"
*Sachs v. Cantwell*, No. 10 Civ. 1663, 2012 U.S. Dist. LEXIS 125335, at *44, 2012 WL 3822220,
at *14 (S.D.N.Y. Sept. 4, 2012), and courts within the Second Circuit have held that "overly tight
handcuffing can constitute excessive force," *Lynch v. City of Mount Vernon*, 567 F. Supp. 2d
459, 468 (S.D.N.Y. 2008).  In determining "the reasonableness of handcuffing," a Court is to
consider whether a plaintiff has sufficiently alleged that: "(1) the handcuffs were unreasonably
tight; (2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; (3) the
degree of injury to the wrists."  *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214–15
(E.D.N.Y. 2005) (citations omitted).  "The injury requirement is particularly important."
*Usavage v. Port Auth. Of N.Y. & N.J.*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. Mar. 26, 2013)
(internal quotation marks omitted).  "These injuries need not be 'severe or permanent,' but must
be more than merely '*de minimis*.'"  *Id.* (quoting *Vogeler v. Colbath*, No. 04-CV-6071 (LMS),
2005 U.S. Dist. LEXIS 44658, at *30, 2005 WL 2482549, at *9 (S.D.N.Y. Oct. 6, 2005)).
Furthermore, "[t]here is a consensus among courts in this circuit that tight handcuffing does not
constitute excessive force unless it causes some injury beyond temporary discomfort."  *Lynch*,
567 F. Supp. 2d at 468; *see also Gonzalez*, 2000 U.S. Dist. LEXIS 5230, at *12, 2000 WL
516682, at *4 (E.D.N.Y. Mar. 7, 2000) ("[I]f the application of handcuffs was merely
uncomfortable or caused pain, that is generally insufficient to constitute excessive force.").

Here, there is no evidence indicating that the force used by Officer Roberts or the other
Guilderland Defendants was unreasonable or more than *de minimis*.  The record indicates that
the only use of "force" used against Plaintiff was that he was handcuffed for approximately two
hours and was touched while transporting Plaintiff to the Guilderland Police Department.
Although Plaintiff claims that he complained to Officer Roberts that the handcuffs were too

tight, (Dkt. No. 64-8, at 143–46), it is undisputed that Plaintiff did not suffer any continuing injury beyond the discomfort he experienced while handcuffed.  *See Lynch*, 567 F. Supp. 2d at 467 ("[T]he fact that the tight handcuffing did not cause [plaintiff] any continuing injury is fatal to the excessive force claim.").  Although the tight handcuffing lasted for a duration of approximately two hours, this qualifies as the kind of "temporary discomfort that courts have consistently found cannot constitute a claim for excessive force."  *Bender v. City of New York*, No. 09 CV 3286 (BSJ), 2011 U.S. Dist. LEXIS 103947, at *18, 2011 WL 4344203, at *6 (S.D.N.Y. Sep. 14, 2011) (internal quotation marks omitted) (granting motion to dismiss where plaintiff alleged that she was handcuffed "extremely tightly for nearly fourteen hours leaving indentations in plaintiff's forearms for over six hours").

Summary judgment is appropriate because Plaintiff has failed to raise a genuine issue of material fact in support of his excessive force claim.

### 3.    Racial Discrimination[6]

Plaintiff alleges that the Guilderland Defendants discriminated against Plaintiff when Officer Roberts "declined to investigate the issue immediately, instead relying on his ten years of police service to assume that African-American men are guilty of the crimes they are suspected of."  (Dkt. No. 70-23, at 25).  In response, the Guilderland Defendants argue that, because "the

---

[6] Courts in the Second Circuit "resolve Section 1981 claims under Section 1983 standards."  *Anderson v. City of New York*, No. 06-CV-5726 (RRM) (RER), 2012 U.S. Dist. LEXIS 182520, at *8–9, 2012 WL 6720694, at *3 (E.D.N.Y. Dec. 27, 2012); *see also Whaley v. City Univ. of N.Y.*, 555 F. Supp. 2d 381, 400 (S.D.N.Y. 2008) ("To the extent [plaintiff] seeks to vindicate any independent rights under 42 U.S.C. § 1981, he must do so via claims under § 1983.").  Because § 1981 "provides no broader a remedy against a state actor than a suit brought under §1983," when a plaintiff brings claims under both statutes "and the defendants are state actors, the claims merge and the § 1981 claim is treated exactly like the § 1983 claim."  *Caidor v. M&T Bank*, No. 5:05-CV-297, 2006 U.S. Dist. LEXIS 22980, at *39–41, 2006 WL 839547, at *10 (N.D.N.Y. Mar. 27, 2006) (internal quotation marks omitted).  Accordingly, "a separate § 1981 analysis is not required, and the Court will consider Plaintiff's § 1981 claims only pursuant to § 1983."  *Anderson*, 2012 U.S. Dist. LEXIS 182520, at *8–9, 2012 WL 6720694, at *3.

only evidence of racial animus is the plaintiff's own belief that the arrest was racially

motivated," Plaintiff's discrimination claim must be dismissed.  (Dkt. No. 74, at 10).  Because

there are no material issues of fact as to Plaintiff's racial discrimination claims, the Guilderland

Defendants' motion for summary judgment is granted.

      "The Equal Protection Clause of the Fourteenth Amendment commands that no State

shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

essentially a direction that all persons similarly situation should be treated alike."  *City of*

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV,

§ 1).  To adequately plead an "equal protection violation, claimants must prove purposeful

discrimination directed at an identifiable or suspect class."  *Giano v. Senkowski*, 54 F.3d 1050,

1057 (2d Cir. 1995).  Although the Second Circuit has held that "[m]erely conscious exercise of

some selectivity in enforcement is not in itself a federal constitutional violation," *United States v.*

*Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974), "a plaintiff who . . . alleges that a facially neutral

law or policy has been applied in an intentionally discriminatory race based manner . . . is not

obligated to show a better treated, similarly situated group of individuals of a different race in

order to establish a claim of denial of equal protection," *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d

Cir. 2001).

      Plaintiff fails to offer any support for his discrimination claim against the Guilderland

Defendants beyond the conclusory allegation that Officer Roberts "immediately came to the

conclusion and presupposition that the only reasonable inference one could make . . . was that an

African American male was suspected of credit card fraud and must automatically be guilty

despite absolutely no evidence indicating so."  (Dkt. No. 70-23, at 25).  Again, it is undisputed

that the numbers printed on the transaction receipt were different than those printed on Plaintiff's

card.  As explained above, Officer Roberts had probable cause to believe that Plaintiff possessed

and used a stolen or manipulated debit card at H&M.  Furthermore, there is no evidence that any

of the other Guilderland Defendants did or said anything that would allow a jury to find that

Defendants intentionally discriminated against Plaintiff on the basis of race.  Accordingly,

Plaintiff's claim for racial discrimination is dismissed.[7]

#### C.    State Law Claims

Having found that all of Plaintiff's federal claims against all Defendants are subject to

dismissal, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining

state-law claims for illegal detention, false arrest, assault, and battery.  *See* 28 U.S.C. §

1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction

over [pendent state law claims] if . . . the district court has dismissed all claims over which it has

original jurisdiction."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the

usual case in which all federal-law claims are eliminated before trial, the balance of factors to be

considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness,

and comity—will point toward declining to exercise jurisdiction over the remaining state-law

claims.").  Accordingly, Plaintiff's state-law claims against Defendants are dismissed.

### V.    CONCLUSION

For these reasons, it is

**ORDERED** that Defendant H&M's motion for summary judgment (Dkt. No. 64) is

**GRANTED** in its entirety; and it further

---

[7] The Guilderland Defendants argue that they are entitled to qualified immunity as to Plaintiff's false arrest, excessive force, and racial discrimination claims.  (Dkt. No. 65-7, at 9–11).  Because there is no issue of material fact as to each of these claims, however, the Court need not reach the issue here. *Donovan v. Briggs*, 250 F. Supp. 2d 242, 253–54 (W.D.N.Y. 2003) (explaining that, because "probable cause for plaintiff's arrest existed, [the court] need not reach the issue of qualified immunity" (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001))).

**ORDERED** that the Guilderland Defendants' motion for summary judgment (Dkt. No. 65) is **GRANTED** in its entirety; and it is further

**ORDERED** that the federal claims asserted in the Amended Complaint (Dkt. No. 6) are **DISMISSED with prejudice**; and it is further

**ORDERED** that the state-law claims asserted in the Amended Complaint (Dkt. No. 6) are **DISMISSED** for lack of subject-matter jurisdiction; and it is further

**ORDERED** that the Clerk is directed to close this case.

**IT IS SO ORDERED.**

Dated: January 17, 2018
      Syracuse, New York

Brenda K. Sannes
U.S. District Judge